208 F.3d 1032 (D.C. Cir. 2000)
 In re: Jibril L. Ibrahim a/k/a Grant Anderson, Appellant
v.
District of Columbia and The Board of Trustees of the University of the District of Columbia, Appellees
In re: Grant Anderson Appellant
v.
District of Columbia and District of Columbia Court of Appeals, Appellees
In re: Johnny Ray Chandler Appellant
v.
District of Columbia Department of Corrections, et al.,Appellees
 No. 96-7069, No. 96-7070, No. 96-7272, No. 97-5041
 United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued March 7, 2000
Decided April 14, 2000
 
 Appeal from the United States District Court for the District of Columbia(No. 94cv02687)(No. 95cv02367)(No. 95ms00321)(No. 94cv02687)(No. 95cv02367)
 Stephen J. Kane, Student Counsel, argued the cause as amicus curiae on the side of appellant Johnny Ray Chandler in No.97-5041. With him on the briefs was Steven H. Goldblatt, amicus curiae, appointed by the court.
 Rebecca L. Spiro, Student Counsel, argued the cause as amicus curiae on the side of appellant Jibril L. Ibrahim, a/k/a Grant Anderson in the remaining cases. With her on the briefs were Steven H. Goldblatt, amicus curiae, appointed by the court, and Lisa M. Porcari, Supervising Attorney.
 Carl J. Schifferle, Assistant Corporation Counsel, argued the causes for appellees. With him on the briefs were Robert R. Rigsby, Acting Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel. Eric H. Holder, Jr., U.S. Attorney at the time the briefs were filed, R. Craig Lawrence, and Rudolph Contreras, Assistant U.S. Attorneys, and Mary L. Wilson, Assistant Corporation Counsel, entered appearances.
 Before: Ginsburg, Sentelle and Henderson, Circuit Judges.
 Opinion for the Court filed by Circuit Judge Ginsburg.
 Ginsburg, Circuit Judge:
 
 
 1
 Jibril Ibrahim, ne Grant Anderson, asks us to resolve two questions regarding the application of the fee provisions of 28 U.S.C. S 1915, as amended by the PrisonLitigation Reform Act, to events that occurred prior to the effective date of that Act. Because the appeal of Johnny Ray Chandler raises the second question as well, we decide his case along with that of Mr. Ibrahim.
 
 
 2
 First, we consider whether the Prison Litigation Reform Act applies to a notice of appeal filed before the effective date of the Act but held in abeyance until after that date pending the district court's disposition of post-judgment motions. Second, we determine whether civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief can be granted, prior to the effective date of the Act, are to be counted in determining whether a prisoner has three "strikes"--as in "three strikes and you're out"--and therefore may no longer prosecute a claim in forma pauperis.
 
 
 3
 We conclude that Mr. Ibrahim's notices of appeal were not "filed" until the district court decided his post-judgment motions after the effective date of the Act. We further hold, as has every other circuit to have considered the matter, that an action dismissed for one of the reasons listed above prior to the effective date of the Act counts as a strike. Finally, we grant Messrs. Ibrahim and Chandler 30 days, grace in which to pay the filing fee.
 
 I. Background
 
 4
 On April 26, 1996 the Congress amended 28 U.S.C. S 1915 as part of the Prison Litigation Reform Act of 1995 (PLRA), which was Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, S 804, 110 Stat. 1321-66, 1321-73 (1996). Whereas before the amendment an indigent prisoner could file a civil action in federal court without having to pay a filing fee, 28 U.S.C. S 1915(a) (1994), § 1915 now requires that he pay the filing fee, but allows him to do so in installments. See id. S 1915(b)(1), (2) (Supp. II 1996). An indigent prisoner may not, however, bring a civil action or appeal a judgment in forma pauperis, and thereby avail himself of the installment plan, if he has
 
 
 5
 on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal ...that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief maybe granted,unless the prisoner is under imminent danger of serious physical injury.
 
 
 6
 28 U.S.C. S 1915(g).
 
 
 7
 Mr. Chandler does not dispute that he filed at least three actions that were dismissed as frivolous or malicious, or for failure to state a claim, prior to the effective date of the PLRA. See Chandler v. District of Columbia Department of Corrections, No. 95-2366, slip op. at 2-6 (D.D.C. March 11, 1996) (recounting numerous dismissals of complaints filed by Chandler). Mr. Chandler's present appeal arises out of the district court's dismissal of a complaint he filed on December 26, 1995, in which he alleged that a District of Columbia corrections officer violated his civil rights by placing him in a segregated cell and questioning him without first giving him a Miranda warning. Mr. Chandler named numerous defendants in his complaint, including the corrections officer; the district dismissed his claim as to the officer on January 28, 1997, and Mr. Chandler timely filed an appeal from the order of the district court.
 
 
 8
 As for Mr. Ibrahim, he has long been recognized as a "prolific filer" in this and other courts; his complaints were so "profuse and meritless" that in 1995 the district court enjoined him from filing any further complaint without first obtaining leave of court. See Anderson v. District of Columbia Public Defender Service, 881 F. Supp. 663, 669-71 (D.D.C. 1995) (noting Ibrahim had filed five claims dismissed as frivolous). In 1996 the district court denied Mr. Ibrahim leave to file two civil complaints against the District of Columbia. In March 1996, shortly before enactment of the PLRA, Mr. Ibrahim filed notices of appeal in the district court. Several days later he filed a Motion for Clarification in one of thecases (No. 95-MS-321), asking the district court to consider the merits of his complaint once more. In the other case (No. 994-CV-2687) Mr. Ibrahim filed several postjudgment motions, including a Motion to Vacate the Judgment, a Motion for Reconsideration and Motion to Make Findings of Fact and Law, and a Motion for Leave to File a Supplemental Complaint. The last of these he filed after the effective date of the PLRA.
 
 
 9
 We held the appeals in both of Mr. Ibrahim's cases in abeyance until the district court denied all his post-judgment motions in December 1996. Mr. Ibrahim then appealed the denial of his post-judgment motions and filed another notice of appeal in No. 94-CV-2687, which we construe as an amendment of his first appeal in that case. See Fed. R. App. P. 4(a)(4)(B). We set his cases for argument along with Mr. Chandler's and appointed an amicus curiae to present arguments on behalf of both appellants.
 
 II. Analysis
 
 10
 In order to determine whether Mr. Ibrahim's appeals are subject to the PLRA, we must first ascertain when Mr. Ibrahim's notices of appeal were "filed" for the purposes of S 1915. If they were not "filed" until after the effective date of the PLRA, then we must consider whether Mr. Ibrahim's pre-PLRA dismissals, as well as those of Mr. Chandler, count as "strikes" under S 1915(g).
 
 
 11
 A. When an Appeal Is Deemed "Filed"
 
 
 12
 Under Federal Rule of Appellate Procedure 4(a)(4), while certain post-judgment motions are pending in the district court, a notice of appeal is "ineffective to appeal from the judgment or order, or part thereof, specified in the notice of appeal, until the entry of the order disposing of the last such motion outstanding."* The advisory committee's notes concerning the 1993 amendments to Rule 4 state that a premature appeal is "suspended" pending the resolution of a postjudgment motion. Therefore, according to the amicus, the advisory committee must have intended that an appeal be deemed filed when it is first submitted; a post-judgment motion simply puts the appeal in suspense until the proper time for the court to consider it. This conclusion is supported, the amicus contends, by Federal Rule of Appellate Procedure 3(e), which requires the appellant to pay the filing fee when the appeal is first filed. Because Rule 3(e) does not mention the possibility of payment being delayed pending the district court's resolution of a post-judgment motion, the argument goes, the appeal should be considered "filed" when the filing fee is paid--that is to say, when the appeal is first filed.
 
 
 13
 The amicus's reliance upon Rule 3(e) is misplaced--especially in this case, where Mr. Ibrahim seeks to proceed in forma pauperis under the pre-PLRA version of § 1915, without ever paying the filing fee. Even before the PLRA, the mere filing of a notice of appeal and a request to proceed in forma pauperis did not constitute filing of the appeal: "It was not until ... after [the plaintiff] had been permitted by the district court to proceed in forma pauperis, that the complaint was 'filed' and entered as such on the docket sheet." Toliver v. County of Sullivan, 841 F.2d 41, 42 (2d Cir. 1988). Nor did the PLRA work any change in this regard. See Smith v. United States, 182 F.3d 25, 30 (D.C. Cir. 1999) ("[W]e will deem a prisoner to have 'filed an appeal in forma pauperis' as soon as he has both filed a notice of appeal and been granted in forma pauperis status, but not before"). In sum, permission to proceed in forma pauperis is merely a substitute for payment of the filing fee; an appellant must either pay the fee or be excused as a pauper before his appeal may proceed.
 
 
 14
 Regardless when--or whether--a filing fee is paid, however, a premature notice of appeal which is "ineffective" for the purposes of Rule 4 cannot be effective for the purposes of the PLRA. Were we to consider Mr. Ibrahim's notice of appeal "filed" for purposes of the PLRA despite its being declared by Rule 4 "ineffective to appeal from the judgment or order ... specified" therein, we would give effect to an otherwise ineffective filing in the teeth of the Rule. Cf. Ekstrom v. Value Health, Inc., 68 F.3d 1391, 1394 (D.C. Cir. 1995) ("Appellants first moved for reconsideration, and then filed a notice of appeal.... [T]he District Court denied appellants' motion to reconsider ... and the notice of appeal became effective"). That we cannot do. Therefore, Mr. Ibrahim cannot avoid the strictures of the PLRA by filing a premature notice of appeal.
 
 
 15
 We conclude that Mr. Ibrahim's appeals ripened only after the district court disposed of his post-judgment motions. Accordingly, Mr. Ibrahim's appeals are, like Mr. Chandler's, subject to the PLRA, and we must determine whether the appellants' pre-PLRA dismissals make them ineligible, pursuant to S 1915(g), to pursue their present appeals in forma pauperis.
 
 B. Section 1915(g)
 
 16
 The presumption against retroactive legislation is well established in our jurisprudence. The reasons for the presumption are straightforward: "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted."Landgraf v. USI Film Products, 511 U.S. 244, 265 (1994). In order to determine whether a statute applies retroactively despite the negative presumption the Supreme Court teaches:
 
 
 17
 [Our] first task is to determine whether Congress has expressly prescribed the statute's proper reach....When ... the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional pre-sumption teaches that it does not govern absent clear congressional intent favoring such a result.
 
 
 18
 Id. at 280.
 
 
 19
 According to the amicus, S 1915(g) contains no "express command" requiring its retroactive application, nor can one be found by employing the "normal rules of [statutory] construction." See Lindh v. Murphy, 521 U.S. 320, 326 (1997).Citing the Supreme Court's conclusion in Martin v. Hadix, 527 U.S. 343, 119 S. Ct. 1998, 2004 (1999), that the phrase "in any action" "does not clearly express congressional intent that [an attorneys' fee provision of the PLRA] apply retroactively" to actions initiated prior to the effective date of the Act, the amicus argues that the term "prior occasions" in S 1915(g) is similarly unclear. Further, we are told that application of S 1915(g) to pre-PLRA dismissals would indeed have a retroactive effect, namely, upsetting prisoners' reasonable expectations that new legal consequences would not attach to their pursuit of nonmeritorious actions or appeals. Before the effective date of the PLRA, a prisoner could expect that, although he might be subjected to an injunction barring further filings without leave of court, he would not have to pay the filing fee before the court would consider any future case he might file. Retrospective application of S 1915(g) would therefore deny prisoners the opportunity "to conform their conduct based on notice that lawsuits filed prior to the PLRA could so severely limit their access to the federal courts."
 
 
 20
 The District responds that both the wording and the purpose of the statute reflect the intent of the Congress to apply § 1915(g) retrospectively. We agree. Byprohibiting a prisoner from proceeding in forma pauperis if "on 3 or more prior occasions" he has had a claim dismissed for one of the enumerated reasons, the Congress sought, as it did throughout the PLRA, to reduce the number of nonmeritorious actions brought by prisoners for whom litigation was a costless pastime. Both the wording of the statute and more particularly its purpose suggest that the "prior occasions" to which § 1915(g) refers include dismissals occurring before the effective date of the PLRA. See Green v. Nottingham, 90 F.3d 415, 419 (10th Cir. 1996); see also Tierney v. Kupers, 128 F.3d 1310, 1311 (9th Cir. 1997). To hold otherwise would be to suggest that the Congress was willing to let all prisoners, including those who had thrice abused the privilege in the past, proceed in forma pauperis with nonmeritorious cases yet three more times.
 
 
 21
 Even if the Congress did not "unambiguously prescribe[ ] the scope of § 1915(g)," however, the appellants' argument that the statute should not be applied to them fails because the statute simply does not have a "retroactive effect," as that term is used in Landgraf. See Green, 90 F.3d at 419-20; see also Martin, 119 S. Ct. at 2006 ("[I]nquiry into whether a statute operates retroactively demands a common sense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment' ") (quoting Landgraf, 511 U.S. at 270). As a procedural rule governing the filing of a claim in forma pauperis, S 1915(g) neither divests a prisoner of his right to bring a claim nor changes the law in a way that adversely affects his prospects for success on the merits of the claim. See Green, 90 F.3d at 420. Section 1915(g) merely specifies that, after having three times filed suits or appeals that were dismissed on one of the enumerated grounds, a prisoner must pay his own way like any other litigant.
 
 
 22
 Although we understand that a change even in a procedural rule may have a retroactive effect, see Martin, 119 S. Ct. at 2006, the amendment of § 1915(g) does not. Leave to file a claim in forma pauperis has always been a matter of grace, a privilege granted in the court's discretion, see Rivera v. Allin, 144 F.3d 719, 722 (11th Cir. 1998) ("the exception rather than the rule"), and denied in the court's discretion when that privilege has been abused by filing claims or appeals that are frivolous or otherwise not taken in good faith. See Sills v. Bureau of Prisons, 761 F.2d 792, 795 (D.C. Cir. 1985);Maloney v. E.I. DuPont de Nemours & Co., 396 F.2d 939, 940 (D.C. Cir. 1967). Its loss, therefore, does not "impair rights" the appellants had when they filed their three pre-PLRA cases. Nor is the loss any greater or different when it is the Congress rather than the court that decides how many nonmeritorious cases are enough to start charging for admission to the forum.
 
 
 23
 We understand § 1915(g) as does the Sixth Circuit, therefore: The statute "does not impose new or additional liabilities, but instead requires collection of a fee that was always due." Wilson v. Yaklich, 148 F.3d 596, 603 (1998) (quoting Adepegba v. Hammons, 103 F.3d 383, 386-87 (5th Cir. 1996)).Hence we join the eight other circuits that have considered the question and concluded that cases dismissed prior to the effective date of the PLRA count as "strikes" under S 1915(g). See Welch v. Galie, 207 F.3d 130, 131-32 (2d Cir. 2000); Adepegba, 103 F.3d at 387-88 (5th Cir.);Wilson, 148 F.3d at 604 (6th Cir.); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1025 (7th Cir. 1996); In re Tyler, 110 F.3d 528, 529 (8th Cir. 1998); Tierney, 128 F.3d at 1312 (9th Cir.);Green, 90 F.3d at 420 (10th Cir.); Rivera, 144 F.3d at 730 (11th Cir.); cf. Keener v. Pennsylvania Board of Probation & Parole, 128 F.3d 143, 144-45 (3d Cir. 1997) (pre-PLRA dismissals for frivolousness included as "strikes" under § 1915(g)).
 
 
 24
 Neither Mr. Ibrahim nor Mr. Chandler claims to be in "imminent danger of serious physical injury," which would entitle them to file their appeals in forma pauperis regardless of their having accrued threeprior dismissals. See 28 U.S.C. S 1915(g). In order properly to bring their appeals before us, therefore, Messrs. Ibrahim and Chandler must pay the full fare. See Keener, 128 F.3d at 145; Green, 90 F.3d at 420.
 
 III. Conclusion
 
 25
 For the foregoing reasons, we hold first that Mr. Ibrahim's notice of appeal was not "filed" in this court until the district court disposed of his post-judgment motions, which was after the effective date of the PLRA. In addition, we conclude that pre-PLRA dismissals count as "strikes" under § 1915(g).Accordingly, Messrs. Ibrahim and Chandler must pay the filing fee within 30 days.
 
 
 26
 So ordered.
 
 
 
 Notes:
 
 
 *
 Rule 4(a)(4) was amended in 1993, 1995, and again in 1998. We rely upon the 1995 version because it was in effect at the time of Mr. Ibrahim's appeals. We note, however, that, in substance, the relevant portion of the rule has not been changed since 1993. See Fed. R. App. P. 4 advisory committee's notes.