# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 19, 2007          Decided June 26, 2007

No. 05-5171

JAMES A. BUTLER,
APPELLANT

v.

DEPARTMENT OF JUSTICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 05cv00288)

*Jamie W. Campbell*, Student Counsel, argued the cause as *amicus curiae* in support of appellant. With her on the briefs were *Steven H. Goldblatt*, appointed by the court, and *David J. Arkush*, Supervising Attorney.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence* and *W. Mark Nebeker*, Assistant U.S. Attorneys. *Michael J. Ryan*, Assistant U.S. Attorney, entered an appearance.

Before: TATEL, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Appellant James A. Butler, a federal prisoner, seeks leave to file *in forma pauperis* ("IFP") on an appeal before this Court. He has on at least five prior occasions brought appeals before this Court that were dismissed for failure to prosecute. The question before us is whether those dismissals are strikes under the Prison Litigation Reform Act ("PLRA" or the "Act"). We hold that they are not, but nonetheless exercise our supervisory discretion to deny Butler IFP status.

## I.

In 1996, Congress passed the Prison Litigation Reform Act, Pub. L. No. 104-134 §§ 801-10, 110 Stat. 1321 (1996), to "help bring relief to a civil justice system overburdened by frivolous prisoner lawsuits," 141 CONG. REC. S14408-01, *S14418 (daily ed. Sept. 27, 1995) (statement of Sen. Hatch), and to "reduce the number of nonmeritorious actions brought by prisoners for whom litigation was a costless pastime," *Ibrahim v. District of Columbia*, 208 F.3d 1032, 1036 (D.C. Cir. 2000). The PLRA imposed several limitations on a prisoner's ability to file lawsuits and pursue appeals in federal courts. One of those limitations,[1] colloquially known as the "three strikes" provision, prohibits a prisoner from proceeding *in forma pauperis* if he has had three or more actions or appeals in federal courts dismissed as frivolous, malicious, or for failure to state a claim, unless the

---

[1] Other limitations include an exhaustion requirement for § 1983 claims, *see* 42 U.S.C. § 1997e(a), a screening procedure by which courts dismiss before docketing complaints that do not meet certain criteria, *see* 28 U.S.C. § 1915A, and a requirement that prisoners pay the entire filing fee over time (previously when IFP status was granted the fee was waived), *see* 28 U.S.C. § 1915(b).

prisoner faces imminent danger of serious physical harm. 28 U.S.C. § 1915(g).[2]

Butler, who is serving a life sentence, filed a claim under the Freedom of Information Act ("FOIA") in district court seeking records related to his conviction from the Executive Office of the United States Attorneys and moved for leave to file IFP. The district court denied his motion because it found that Butler had incurred at least three strikes under § 1915(g) and dismissed the case without prejudice to his refiling upon payment of the filing fee.

Butler appealed and filed a motion for leave to proceed IFP in this Court. We ordered the government to respond to his motion and to address whether Butler had incurred three strikes under § 1915(g). We also appointed amicus curiae to argue in support of Butler's position. The government responded by arguing that Butler had three appeals pending before this Court in which he was either proceeding or attempting to proceed IFP,[3]

---

[2] 28 U.S.C. § 1915(g) provides in full:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

[3] *Butler v. DOJ*, No. 05-5022 (D.C. Cir. filed Jan. 24, 2005); *Butler v. DOJ*, No. 05-5073 (D.C. Cir. filed Mar. 3, 2005); *Butler v. DOJ*, No. 05-5171 (D.C. Cir. Apr. 22, 2005).

and that we had dismissed for failure to prosecute at least five separate appeals[4] in which he was proceeding IFP. The government argues that these five dismissals are strikes under § 1915(g) and that Butler is therefore barred from proceeding IFP in this appeal. Amicus asserts that dismissals for failure to prosecute are not strikes under § 1915(g) and urges us to allow Butler to proceed IFP. Because Butler does not claim that he is "under imminent danger of serious physical injury," the only question before us is whether a dismissal for failure to prosecute an appeal is a strike, and if not, whether we should nevertheless exercise our discretion to deny Butler IFP status.[5]

## II.

In determining whether a dismissal for failure to prosecute an appeal is a strike under the PLRA, we begin, as we must, with the language of the statute. *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1352 (D.C. Cir. 2002) ("In construing a statute, the court begins with the plain language of the statute."). By its own terms, the PLRA counts as a strike only an action or appeal that is "dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). A dismissal for

---

[4] *Butler v. IRS*, No. 04-5332 (D.C. Cir. Aug. 5, 2005); *Butler v. Bureau of Prisons*, No. 04-5231 (D.C. Cir. Feb. 23, 2005); *Butler v. IRS*, No. 04-5091 (D.C. Cir. Jan. 6, 2005); *Butler v. DOJ*, No. 99-5341 (D.C. Cir. Nov. 19, 1999); *Butler v. DOJ*, No. 97-5308 (D.C. Cir. July 15, 1998).

[5] In *Thompson v. DEA*, No. 04-5450, also decided today, we address several related questions including whether prisoners moving to proceed IFP bear the burden of proving their eligibility for IFP status and whether dismissals for various other reasons constitute strikes.

5

failure to prosecute is clearly not a dismissal for "failure to state a claim on which relief may be granted"—a phrase that tracks the language of Federal Rule of Civil Procedure 12(b)(6) and is not implicated here. Nor is it a dismissal "on the grounds that it is frivolous," a dismissal based on the utter lack of merit of an action or appeal. *See Tafari v. Hues*, 473 F.3d 440, 442 (2d Cir. 2007) ("A frivolous action advances 'inarguable legal conclusion[s]' or 'fanciful factual allegation[s].' Thus, the term 'frivolous' refers to the ultimate merits of the case.") (alterations original, citation omitted). By contrast, a dismissal for failure to prosecute does not rest on the merits of a claim.[6] *Mathes v. Comm'r of Internal Revenue*, 788 F.2d 33, 35 (D.C. Cir. 1986) ("The substantive merits of a claim are of course irrelevant to the propriety of a dismissal for failure to prosecute . . . ."); *see also Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Public policy favors disposition of cases on the merits. Thus, this factor weighs against dismissal [for failure to prosecute]."); *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (noting the strong predisposition to resolve cases on the merits rather than dismissing for failure to prosecute).

That leaves us with the question whether a dismissal for failure to prosecute fits appropriately within the statutory category of a dismissal "on the ground[] that it is . . .

_____

[6] Federal Rule of Civil Procedure Rule 41(b) also obliquely recognizes this distinction by providing that a dismissal for failure to prosecute "*operates as* an adjudication upon the merits." FRCP 41(b) (emphasis added). The phrase "operates as" indicates that a dismissal for failure to prosecute is not, in fact, a decision on the merits of the claim, but rather functions as such for the purposes of claim preclusion. *See* 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4440 (2d ed. 2002).

malicious."[7] We hold that it does not. "A case is malicious if it was filed with the intention or desire to harm another." *Tafari*, 473 F.3d at 442 (parenthetically quoting *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005)). Although it is possible that an action or an appeal dismissed for failure to prosecute may have been filed with the sole intent to harm another, that need not be the case. As amicus correctly points out, there are non-malicious reasons why a prisoner may fail to prosecute a matter, including transfer to another facility and sickness. *See* Amicus Reply Br. at 18.

The government nonetheless urges us to exercise our discretionary authority to create a *per se* rule that would count all dismissals for failure to prosecute as strikes. Oral Arg. at 42-46. In *Neitzke v. Williams*, 490 U.S. 319 (1989), the Supreme Court rejected a similar proposal. At the time, the *in forma pauperis* statute authorized "federal courts to dismiss a claim filed *in forma pauperis* 'if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.'" 490 U.S. at 324 (quoting 28 U.S.C. § 1915(d)(1988), *amended by* Pub. L. No. 104-134 § 804(a)(2), 110 Stat. 1321 (1996)). Several prison officials petitioned the Supreme Court to adopt "a *per se* reading" of the *in forma pauperis* statute, categorizing all complaints dismissed for failure to state a claim under Rule 12(b)(6) as "frivolous" under § 1915(d). *Id.* at 325. The Court acknowledged that there were good policy reasons behind adopting the petitioners' approach, but nonetheless refused to

---

[7] The government's brief appeared to argue as much. *See* Appellee's Br. at 23 ("There is something inherently abusive, and therefore, *malicious* about" a prisoner bringing suit and then abandoning his case.) (emphasis added). However, at oral argument the government clarified its position, conceding that dismissals for failure to prosecute are not strikes within the meaning of § 1915(g). Oral Arg. at 46:3-5.

adopt it because the Court's "role . . . is not to make policy, but to interpret a statute," and "as a matter of statutory construction [the petitioners' proposal] is untenable." *Id.* at 326. The Court therefore concluded that complaints "filed *in forma pauperis* [are] not automatically frivolous within the meaning of § 1915(d) because [they] fail[] to state a claim." *Id.* at 331.

The government's proposal here suffers from a similar defect. Had Congress wanted to include dismissals for failure to prosecute among the strikes listed in § 1915(g), it could have done so. *See, e.g.*, *Tafari*, 473 F.3d at 443 ("The PLRA makes clear that Congress was aware of, and intended to differentiate between, particular bases for dismissal."). If we were to adopt the government's approach, we would be effectively writing another category of strikes into the PLRA. We have neither the authority nor inclination to substitute our policy judgment for that of Congress. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (courts have a "duty to refrain from reading a phrase into the statute when Congress has left it out"). Such an expansion of the statute would not even advance the purpose of the PLRA, which was "designed to stem the tide of egregiously *meritless* lawsuits." *Tafari*, 473 F.3d at 443 (emphasis added). Each of the three categories of strikes in the statute involves dispositions that look to the merits of the suit. As we have already noted, a dismissal for failure to prosecute is made without regard to the merits of the claim. Rather, it is a mechanism whereby courts may protect their power to ensure compliance with their rules and orders. *See* D.C. Cir. Rule 38 ("When any party to a proceeding before this court . . . fails to comply with the FRAP, these rules, or an order of this court . . . the court may . . . impose appropriate sanctions . . . includ[ing] dismissal for failure to prosecute"); 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4440 (2d ed. 2002) (noting that

the purpose of this "strong sanction [is] to enforce compliance with proper procedure").

We recognize that a prisoner who files repeated actions or appeals only to allow them to languish can present a burden to the courts similar to the problems addressed by the three strikes provision of the PLRA.  A prisoner "for whom litigation was a costless pastime" could repeatedly bring actions or appeals that were dismissed for failure to prosecute without incurring any costs—either financially or as strikes under the PLRA. *Ibrahim*, 208 F.3d at 1036.  We believe the best solution to this problem lies in exercising our discretionary authority to deny IFP status to prisoners who have abused the privilege.  Our ability to do so derives from both the PLRA itself, 28 U.S.C. § 1915(a) ("any court of the United States *may authorize* the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor") (emphasis added), and our more general supervisory authority to manage our docket so as to "promote[] the interests of justice," *In re McDonald*, 489 U.S. 180, 184 (1989).

Litigants have a constitutional right of access to the courts, *see, e.g.*, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), but that right "is neither absolute nor unconditional," *In re Green*, 669 F.2d 779, 785 (D.C. Cir. 1981) (per curiam).  It must be "counterbalanced by the traditional right of courts to manage their dockets and limit abusive filings." *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 517 (11th Cir. 1991) (citation omitted).  When a court determines that a litigant is an abusive filer, it "may impose conditions upon [the] litigant—even onerous conditions . . . so long as they are, taken together, not so burdensome as to deny the litigant meaningful access to the courts." *In re Green*, 669 F.2d at 786.  Denying a prisoner the ability to proceed IFP is one such condition courts have imposed

on prisoners who have abused the IFP privilege. *Ibrahim*, 208 F.3d at 1036 ("Leave to file a claim *in forma pauperis* has always been a matter of grace, a privilege granted in the court's discretion . . . , and denied in the court's discretion when that privilege has been abused by filing claims or appeals that are frivolous or otherwise not taken in good faith.") Indeed, the Supreme Court has gone so far as to say that it has "*a duty* to deny *in forma pauperis* status to those individuals who have abused the system." *In re Sindram*, 498 U.S. at 180 (emphasis added). Thus, our authority to deny IFP status to a prisoner who has abused the privilege is clear. What is not so clear, however, is when that discretion should be exercised.

At oral argument, we put the question to amicus, asking for a standard that we might apply in determining when to exercise our discretion to deny a prisoner IFP status. In response, amicus urged us to apply the same standard that has been used to determine whether a litigant is an abusive filer who warrants sanctioning, Oral Arg. at 24:18-21, namely, when "[b]oth the number and content of [the litigant's] filings" constitute a pattern of frivolousness or harassment of either defendants or the court, *In re Powell*, 851 F.2d 427, 434 (D.C. Cir. 1988) (per curiam). We find this suggestion helpful and would add two additional factors to the standard—the frequency and disposition of the filings. In a series of cases concluding that four *pro se* petitioners had abused the IFP privilege to such an extent that the Supreme Court was warranted in issuing an order preventing them from proceeding IFP on any petition for extraordinary writs, the Court looked to the number, content, frequency, and disposition of the petitioner's previous filings to make that determination. *See, e.g.*, *In re Anderson*, 511 U.S. 364, 365 (1994) (denying petitioner IFP status whenever seeking an extraordinary writ because petitioner's twenty-two petitions and motions over three years were an abuse of the privilege); *In re Demos*, 500 U.S. 16, 16-17 (1991) (denying petitioner IFP

status whenever seeking an extraordinary writ because petitioner's thirty-two IFP filings over three years were an abuse of the privilege); *In re Sindram*, 498 U.S. 177, 177-78 (1991) (denying petitioner IFP status whenever seeking an extraordinary writ because petitioner's forty-three petitions and motions over three years were an abuse of the privilege); *In re McDonald*, 489 U.S. 180 (1989) (denying petitioner IFP status whenever seeking an extraordinary writ because petitioner's seventy-three filings over eighteen years were an abuse of the privilege). Thus, in concluding whether Butler should be allowed to proceed IFP, we will examine the number, content, frequency, and disposition of Butler's previous filings to determine if there is a pattern of abusing the IFP privilege in his litigation history.

Before turning to that analysis, we pause to address amicus' reliance on our decision in *Powell*, which it asserts supports the argument that Butler is not an abusive filer. *See* Amicus Reply Br. at 16-18. In *Powell*, we reversed the district court's enjoining of two *pro se* litigants from filing claims without leave of the court, because, we concluded, their prolific filings did not warrant such an "extreme" remedy. *See* 851 F.2d at 434 ("An injunction is an extreme sanction and should be imposed in only the most egregious cases. On this record, such a case is not before us."). On that conclusion rests a fundamental distinction between *Powell* and what we are considering here that escapes amicus. *Powell* involved a direct restriction on the litigant's right of access to the courts. The question facing us is quite different. We are not contemplating imposing a restriction on a constitutional right, but rather denying a privilege. The factors we consider to make that determination are similar to those employed by *Powell* and its progeny, but the test is different because we are not considering the extreme penalty of denying Butler access to the courts. Our inquiry therefore is not whether Butler's litigation history is

abusive enough to justify the extreme penalty of an injunction, but simply whether he has abused a special privilege of the court to such an extent that that privilege should not again be extended to him here.

Butler is a prolific filer. In addition to his five appeals that we dismissed for failure to prosecute, we are aware of five other appeals Butler has filed with this court.[8] Eight of these ten appeals have been docketed within the last four years. For each, Butler was proceeding IFP. The Joint Appendix contains a PACER print-out listing dozens of cases that include "James A. Butler" as a party. Although it is unlikely that all of these are our "James A. Butler," we have been able to identify at least fifteen that are.[9] It appears that all of these are FOIA actions, most of which are related to Butler's conviction. Many of these appear to be seeking the same documents. In each, he was

---

[8] USCA No. 06-5116 (held in abeyance); USCA No. 06-5026 (held in abeyance); USCA No. 05-5171 (this case); USCA No. 05-5073 (held in abeyance); USCA No. 05-5022 (Butler lost on summary affirmance).

[9] *Butler v. DOJ*, 1:2002cv00412 (filed Mar. 6, 2002); *Butler v. DEA*, 1:1994cv00571 (filed Mar. 21, 1994); *Butler v. DOJ*, 1:2003cv00608 (filed Mar. 6, 2003); *Butler v. Treasury Inspector General*, 1:2003cv00672 (filed Mar. 12, 2003); *Butler v. IRS*, 1:2002cv01034 (filed May 28, 2002); *Butler v. IRS*, 1:2002cv01112 (filed June 7, 2002); *Butler v. Bureau of Prisons*, 1:2002cv01113 (filed June 7, 2002); *Butler v. FBI*, 1:1996cv01150 (filed May 23, 1996); *Butler v. DOJ*, 1:2003cv01209 (filed June 4, 2003); *Butler v. Tapscott*, 1:1994cv01236 (filed Jan. 27, 1995); *Butler v. Assistant Attorney Gen.*, 1:1994cv01241 (filed Nov. 6, 1995); *Butler v. USPO*, 1:1995cv01705 (filed Sept. 8, 1995); *Butler v. DOJ*, 1:1996cv01907 (filed Mar. 15, 1999); *Butler v. Dept. of Treasury*, 1:1995cv01931 (filed Oct. 13, 1995); *Butler v. Bureau of Prisons*, 1:2002cv02203 (filed Nov. 7, 2002).

proceeding IFP.  All but one were dismissed on either summary judgment, a motion to dismiss, or for failure to respond.  Considering this pattern, it appears that filing these actions is a "pastime" for Butler.  We conclude that he has abused the privilege to proceed IFP and deny his motion to do so here again.  Butler may continue to engage in this pastime if he wishes, but if he chooses to do so here, it will have to be on his own dime.

## III.

For the foregoing reasons, Butler's motion for leave to proceed IFP is denied.

*So ordered.*